UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

CORDIE S.,

     Plaintiff,

v.                                                                No. 6:21-CV-031-H-BU

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

     Defendant.

**ORDER ACCEPTING THE FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE MAGISTRATE JUDGE**

United States Magistrate Judge John R. Parker made Findings, Conclusions, and a

Recommendation (FCR) in this case on June 28, 2022.  *See* Dkt. No. 25.  Judge Parker

recommended that the Court affirm the Commissioner of Social Security's decision to deny

the plaintiff's application for disability insurance benefits and supplemental security income.

*Id.* at 1–2.  The plaintiff filed one objection to that recommendation.  Dkt. No. 26.  The

Commissioner did not respond.  Having reviewed the objected-to parts of Judge Parker's

FCR de novo, the Court overrules the plaintiff's objection.  The FCR is adopted in full, and

the ALJ's hearing decision is affirmed.

**1.      Factual and Procedural Background**

The plaintiff filed an application for supplemental security income and for disability

insurance with the Social Security Administration in February 2019.  Dkt. No. 16-1 at 19.

The Administration denied her claims in August 2019 and again upon reconsideration in

January 2020.  *Id.* at 194, 208.  She timely requested a hearing before an Administrative

Law Judge.  *Id.* at 216.   That hearing was held in September 2020.  *Id.* at 56–88 (hearing

transcript).

At the hearing, the plaintiff and a vocational expert (VE) testified.  *Id.*  The ALJ considered the evidence before her and, on October 28, 2020, the ALJ issued her decision (*id.* at 16–33), concluding that the plaintiff was not disabled and was not entitled to disability benefits or supplemental security income based on the requisite five-step analysis.  *Id.* at 29. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since December 28, 2018, the alleged disability onset date.  *Id.* at 21.  At step two, the ALJ found that the plaintiff had many severe impairments, including degenerative disc disease, degenerative joint disease, diabetes mellitus, obesity, carpal tunnel syndrome, and chronic obstructive pulmonary disease.  *Id.*  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the applicable regulations.  *Id.* at 23.  The ALJ also found that the plaintiff had the residual functional capacity (RFC) to perform light work with the following limitations:

> [S]he is able to sit without interruption for up to 30 minutes, followed by an opportunity to stand and stretch briefly (one to two minutes) without leaving the workstation and remaining on task.  She can stand and/or walk without interruption for a combined uninterrupted total of 30 minutes, followed by an opportunity to sit for up to five minutes while remaining on task.  She can frequently balance; occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; and never climb ladders, ropes, or scaffolds.  She can handle, finger, feel, and operate hand controls frequently with both hands.  She can operate foot controls occasionally with her bilateral lower extremities.  She can tolerate no more than occasional exposure to extreme temperatures or respiratory irritants.

*Id.* at 24–25.  At step four, the ALJ found that the plaintiff was unable to perform her past relevant work.  *Id.* at 27.  Finally, the ALJ determined that jobs existed in the national economy in significant numbers that the plaintiff could perform—specifically, as a Cafeteria

Attendant, Office Helper, and Price Marker.  *Id.* at 28–29.  Thus, according to the ALJ's analysis, the plaintiff was not disabled for the period in question.  *Id.* at 29.

After the ALJ issued her decision, the plaintiff requested review from the Social Security Appeals Council, which denied her request in February 2021.  *Id.* at 5–12.  Invoking 42 U.S.C. § 405(g), the plaintiff timely appealed to this Court for review of the Commissioner's decision to deny her application for supplemental security income and disability insurance benefits.  Dkt. No. 1.  The matter was automatically referred to the Honorable Magistrate Judge John Parker pursuant to Special Order 3.  After the Commissioner filed an answer (Dkt. No. 14) and the administrative record was filed (Dkt. No. 16-1), the plaintiff filed her brief requesting that the Commissioner's decision be reversed and remanded (Dkt. No. 22 at 16).  The Commissioner responded in defense of the ALJ's decision.  Dkt. No. 23.  And the plaintiff replied.  Dkt. No. 24.

Judge Parker then issued findings, conclusions, and a recommendation that the ALJ's decision be affirmed.  Dkt. No. 25.  The plaintiff filed one timely objection (Dkt. No. 26), to which the Commissioner failed to respond.  The FCR is ripe for the Court's review.

## 2.    Standard of Review

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).  By contrast, the district judge reviews any unobjected-to findings, conclusions, and recommendations only for plain error.  *Portwood v. Schneider & McKinney P.C.*, No. 3:20-CV-03344-X, 2020 WL 7056302, at *1 (N.D. Tex. Dec. 2, 2020) (Starr, J.).  The Court need not review an FCR de novo if a party's objections are merely recitations of arguments already made to and rejected by the magistrate judge.  *See Nolen-Davidson v. Comm'r, Soc. Sec.*

*Admin.*, No. 4:20-CV-1085-P, 2021 WL 4476763, at *1 (N.D. Tex. Sept. 30, 2021) (Pittman, J.) (explaining that conducting de novo review of previously rejected arguments undermines the efficiency gains that were the goal of the Federal Magistrate's Act); *Owens v. Comm'r of Soc. Sec.*, 1:12-CV-47, 2013 WL 1304470, at *3 (W.D. Mich. Mar. 28, 2013); *see also Thomas v. Arn*, 474 U.S. 140, 153 (1985) ("It seems clear that Congress would not have wanted district judges to devote time to reviewing magistrate's reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the Constitution.").

Just because the Court's review of the Magistrate Judge's FCR is de novo does not mean its review of the Administrative Law Judge's decision is, too.  Rather, the Court reviews the ALJ's determination for "substantial evidence."  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  Indeed, the Court's "review of Social Security disability cases is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard."  *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation and internal quotations omitted).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance." (citation and internal quotation marks omitted)).  The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the

claimant's age, education, and work history.  *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

When reviewing an eligibility determination, "[a] court will reverse the ALJ's decision as not supported by substantial evidence if the claimant shows that [] the ALJ failed to fulfill his duty to develop the record adequately."  *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)).  But the Court does not hold the ALJ to procedural perfection, and the Court will reverse the ALJ's decision for failure to adequately develop the record only if that failure prejudiced the plaintiff.  *See Jones*, 691 F.3d at 733.  "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'"  *Brock*, 84 F.3d at 728 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

In short, a court's review of an ALJ's decision to approve or deny benefits is deferential.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  The Court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [ALJ], even if the evidence preponderates against the [ALJ's] decision."  *Id.* (quoting *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988)).  Indeed, "[c]onflicts in the evidence are for the [ALJ] and not the courts to resolve."  *Id.* (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

**3.    Analysis**

**A.    The Social Security Framework**

Determining eligibility for disability insurance benefits and supplemental security income is a five-step process, but a finding that the claimant is disabled or not disabled at any point along the way is dispositive.  *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813

F.2d 55, 58 (5th Cir. 1987).  Step one asks whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, step two asks whether the claimant has a medically determinable impairment, or a series of impairments, that are severe. § 404.1520(c).  If so, the question at step three is whether that impairment appears on a list that the agency keeps, pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1.  If it does, then benefits are due; if it does not, then the ALJ pauses to determine the claimant's residual functional capacity (RFC), defined as the most physical and mental work the claimant can do on a sustained basis despite her limitations.  20 C.F.R. § 404.1545(a).

The RFC is vital to steps four and five.  At step four, the ALJ must evaluate whether the claimant can still—given her RFC—succeed in her past relevant work.  If she can, then benefits must be denied.  § 404.1520(f).  If she cannot, the ALJ proceeds to the final step and determines, usually with the help of a vocational expert (VE), whether there are significant opportunities in the national economy that the claimant can perform given her RFC. § 404.1520(g)(1).  Again, if there are, the ALJ will deny the application; if there are not, the claimant prevails.  *Id.*  Only at step five does the Administration bear the burden of proof; until then, it rests with the claimant.  *See Copeland*, 771 F.3d at 923; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

To make these determinations, the "ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits."  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  Whether the ALJ properly discharged that duty is the issue here.

### B.     The Plaintiff's Objection

The plaintiff made only one objection to the FCR, and she presents the same argument she pressed before the Magistrate Judge in the first instance.  *See* Dkt. No. 22 at

15–16.  The Court notes that it is "not obligated to address objections which are merely recitations of the identical arguments made before the magistrate judge." *Nolen-Davidson*, 2021 WL 4476763, at \*1 (quoting *Owens*, 2013 WL 1304470, at \*3) (alterations omitted). Nevertheless, out of an abundance of caution, the Court examines the plaintiff's objection. And, just as the Magistrate Judge rejected her argument once before, this Court does the same.

Although an ALJ should order a consultative examination or medical opinion sometimes, she need not when the record as a whole enables her to make a determination that is supported by substantial evidence. *See Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016); *McCray v. Kijakazi*, No. 21-60401, 2022 WL 301544, at \*2 (5th Cir. Feb. 1, 2022) ("If the ALJ has sufficient facts before him to make a determination, he has no obligation to order additional consultative examinations."). Here, the ALJ dutifully considered the record and crafted an RFC tailored to the plaintiff's impairments. *See* Dkt. No. 16-1 at 24–25.  In fact, she addressed specific evidence supporting each finding in the RFC. *Id.* at 25–27.

Still, the plaintiff argues that the ALJ failed to develop the factual record because she did not obtain a medical source opinion from family nurse practitioner (FNP) Ana Jones. Dkt. No. 26 at 1.  But the plaintiff later clarifies that "a full and fair record" would have included a medical opinion from *either* Dr. Nigalye, the government's consultative examiner, or FNP Jones. *Id.* at 2–3.  Regardless, in the plaintiff's view, a host of factors and conditions "collectively 'raise[d] the requisite suspicion'" that a medical opinion was necessary. *Id.* at 4 (quoting *Pearson v. Bowen*, 866 F.2d 809, 812–13 (5th Cir. 1989)).  In support, she refers to the pitted edema in her bilateral lower extremities, Grade IV-VI

audible heart murmur, regular chest pains, difficulty tandem walking, and FNP Jones's note that she would refer the plaintiff to cardiology "once established on disability."  Dkt. No. 16-1 at 595.

The plaintiff's objection is misplaced.  Contrary to her suggestion, she did not "raise a suspicion concerning an impairment necessary to require the ALJ to order a consultative examination to discharge his duty of full inquiry."  *Pearson*, 866 F.2d at 812.  No further medical opinion—whether from Dr. Nigalye or FNP Jones—was required.

### i.      The ALJ was not required to obtain a medical opinion from Dr. Nigalye or FNP Jones.

First, nothing about the plaintiff's pitted edema required the ALJ to obtain a medical opinion from Dr. Nigalye or FNP Jones.  Rather, the ALJ "had sufficient facts before h[er] to make a [proper] determination" regarding the plaintiff's physical limitations.  *McCray*, 2022 WL 301544, at *2.  Specifically, she relied on the plaintiff's "physical examinations" from Dr. Nigalye and Dr. Gilmore, which "show[ed] normal gait and normal ambulation" and that she "retain[ed] the ability to ambulate effectively."  Dkt. No. 16-1 at 24 (citing Dr. Gilmore at 426 and Dr. Nigalye at 528).  In fact, Dr. Nigalye even found "[n]o edema" in her extremities and that her knees, ankles, and feet were all "[n]ormal."  *Id.* at 528.

In addition, the plaintiff testified that she could stand or walk for up to 30 minutes before needing a break.  *Id.* at 64.  This is exactly what her RFC provided: "She can stand and/or walk without interruption for a combined uninterrupted total of 30 minutes, followed by an opportunity to sit for up to five minutes while remaining on task."  *Id.* at 24–25.  Contrary to the plaintiff's insinuation that the evidence would suggest otherwise, her testimony reveals that she can stand or walk for 6 hours out of an 8-hour workday.  *See* Dkt. No. 26 at 3.  If she took five-minute breaks every thirty minutes—excluding lunch—she

would stand or walk for 6.75 hours during an 8-hour workday.  The RFC provides a more conservative estimate, which, as shown above, is supported by substantial evidence.  Such evidence does not raise any suspicion regarding the need for a medical opinion.

Dr. Nigalye's remark that the plaintiff had difficulty tandem walking moves the needle no further.  The difficulty in tandem walking lies more with balance than it does stamina, and the plaintiff takes no issue with the RFC finding that she can "frequently balance."  Dkt. No. 16-1 at 25.  Dr. Nigalye also found that the plaintiff's gait was normal.  *Id.* at 528.  As mentioned, this finding aligns with prior evidence and her own testimony.  *See id.* at 426 (Dr. Gilmore's report), 64 (plaintiff about her ability to stand or walk).

The same is true of the plaintiff's heart murmur and chest pain.  Substantial evidence shows that these did not interfere with her ability to work, and no medical opinion was required.  Dr. Rosenstock noted that the plaintiff had "no murmurs" and "no active chest pain" in July 2019.  Dkt. No. 16-1 at 139–40.  Indeed, Dr. Nigalye evaluated the plaintiff on July 15, 2019 and determined that her cardiovascular examination showed normal results.  *Id.* at 526.  Her "[f]irst and second heart sounds [were] normal in intensity and rhythm," and the doctor detected "[n]o murmurs."  *Id.*  Her chest examination also showed "no cardiac or pulmonary abnormalit[ies]."  *Id.* at 530.  To be sure, FNP Jones did note an audible murmur a few weeks later.  *Id.* at 595.  But in January 2020, Dr. Lee found no medical impairment related to the plaintiff's heart and chest issues.  *Id.* at 167–69.  And at the hearing the plaintiff testified that she was taking medication for the chest pains, which also comported with her medical records.  *Id.* at 70 (hearing testimony), 534–53 (reports noting medication history).  Accordingly, the ALJ reasonably determined that "[n]ormal

objective findings suggest that the claimant's reports of chest pain would not cause more than minimal functional limitations." *Id.* at 22.

Lastly, the Magistrate Judge ably explained that a medical provider's off-handed reference to "disability" does not constitute a medical opinion upon which the plaintiff can rely for a finding of disability. Dkt. No. 25 at 14–15 (citing 20 C.F.R § 404.1513(a)). Nor did it necessitate seeking a medical opinion. FNP Jones noted that she would "refer" the plaintiff to cardiology "once established on disability." Dkt. No. 16-1 at 595. But a physician's statement that a claimant is "disabled" does not require the Commissioner to find that claimant is disabled. *See Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir. 1984). Rather, the ALJ makes that determination after weighing the medical evidence, which she thoroughly did here—chiefly relying on the "normal objective findings" in the record and the plaintiff's testimony. Dkt. No. 16-1 at 22. In such a case, the plaintiff failed to raise the requisite "suspicion" to require an additional medical opinion. *See Pearson*, 866 F.2d at 812–13. And this Court cannot "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [ALJ]." *Brown*, 192 F.3d at 496 (quoting *Johnson*, 864 F.2d at 343).

>    ii.   **Even if a medical opinion from Dr. Nigalye or FNP Jones were required—which it was not—the plaintiff cannot show that she was prejudiced by the ALJ's failure to obtain one.**

In any event, the plaintiff fails to show that she was prejudiced by any determination related to the conditions she lists in her objection. *See Jones*, 691 F.3d at 733 (requiring a showing of prejudice to warrant reversal). With respect to the edema and tandem walking, the ALJ limited her RFC to account for these impairments affecting her lower extremities. *See, e.g.*, Dkt. No. 16-1 at 25–27 (finding she could use her bilateral lower extremities only

"occasionally" to operate foot controls based on her diabetes and pitting edema). These findings were consistent with her testimony regarding her ability to stand and walk. *See id.* at 64 (stating that she could stand or walk "[m]aybe 30 to 45 minutes" at a time). Moreover, the vocational expert testified that the plaintiff could perform multiple jobs even if her RFC were reduced to standing and walking for four hours—rather than six—within an eight-hour workday. *Id.* at 77–79.

The plaintiff similarly fails to show prejudice regarding her heart murmur and chest pain. Her chest pains were being treated with appropriate medication (Dkt. No. 16-1 at 70), and she does not identify how a possible heart murmur would have conflicted with—or required a change to—the existing RFC. Rather, her RFC was tailored to both the medical evidence and her testimony. In other words, she fails to show how a medical opinion from FNP Jones "might have altered the result" of the proceeding. *Brock*, 84 F.3d at 728 (quoting *Kane*, 731 F.2d at 1220). Dr. Nigalye's findings that her cardiovascular indicators were within normal limits bolsters this conclusion. Dkt. No. 16-1 at 526. For all these reasons, the plaintiff has not shown prejudice resulting from the ALJ's failure to obtain a medical opinion from Dr. Nigalye or FNP Jones.

## 4.    Conclusion

Having reviewed the objected-to portion of the FCR de novo, the Court finds that the ALJ's decision is supported by substantial evidence for all the reasons set forth above, as well as for the reasons explained by the Commissioner in her briefing and by the Magistrate Judge in his FCR. No plain error exists elsewhere in the FCR, so it is adopted in full. The Court affirms the Commissioner's decision to deny the plaintiff's application for supplemental security income and disability benefits.

So ordered on September 19, 2022.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE